IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ERNEST BENTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:16-CV-015-D |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in State Custody

filed by petitioner ERNEST GLENN BENTON ("Benton").    For the following reasons, Benton's

habeas application should be DENIED.

I.
PROCEDURAL HISTORY

On June 27, 2012, Benton was charged by grand jury Indictment in Collingsworth County,

Texas, with the first-degree felony offense of aggravated sexual assault of a child, double enhanced

by prior convictions, in violation of Texas Penal Code section 22.01(a)(1)(B)(i).    *The State of*

*Texas v. Ernest Glenn Benton*, Nos. 2878. [ECF 18 at 59].    The Indictment alleged Benton in

Collingsworth County, Texas, on or about April 14, 2012:

> [I]n said County and State, did then and there intentionally or knowingly cause the
> penetration of the sexual organ of Pseudonym DCSO04172012, a child who was
> then and there younger than 14 years of age, by the defendant's mouth.

That same date, the grand jury, by separate Indictment, charged Benton with three counts of the felony offense of indecency with a child, also enhanced by prior convictions, in violation of Texas Penal Code section 21.11(a)(1).    *The State of Texas v. Ernest Glenn Benton*, No. 2879. [ECF 19 at 224].    The Indictment alleged Benton in Collingsworth County, Texas, on or about April 14, 2012:

COUNT 1:

[I]n said County and State, did then and there with the intent to arouse or gratify the sexual desire of [Benton], intentionally or knowingly engage in sexual contact with Pseudonym DCSO04172012 by touching the breast of Pseudonym DCSO04172012, a child younger than 17 years of age.

COUNT 2:

[I]n said County and State, did then and there with the intent to arouse or gratify the sexual desire of [Benton], intentionally or knowingly engage in sexual contact with Pseudonym DCSO04172012 by touching the anus of Pseudonym DCSO04172012, a child younger than 17 years of age.

COUNTY 3:

[I]n said County and State, did then and there with the intent to arouse or gratify the sexual desire of [Benton], intentionally or knowingly engage in sexual contact with Pseudonym DCSO04172012 by touching the genitals of Pseudonym DCSO04172012, a child younger than 17 years of age.

Benton was tried in a joint trial before a jury for the indicted offenses in the 100th Judicial District Court of Collingsworth County; on March 6, 2013, the jury found Benton guilty of both the aggravated sexual assault of a child offense, also finding both the first and second enhancement for prior convictions true, and Count 3 of the indecency with a child offense, also double enhanced, as alleged in the above Indictments.    The other two counts of the second indictment were dismissed by directed verdict after the state's presentation of its case and did not result in conviction. On March 6, 2013, the jury assessed Benton's punishment at life confinement on both counts of conviction, respectively, in the Texas Department of Criminal Justice, Correctional Institutions Division.

Benton filed a direct appeal of his convictions and sentences to the Court of Appeals for the Seventh District of Texas.    On December 9, 2014, the state intermediate appellate court affirmed Benton's convictions.    *Ernest Glenn Benton v. The State of Texas*, Nos. 07-13-00149-CR; 07-13-00150-CR, 2014 WL 6967339 (Tex. App.—Amarillo Dec. 9, 2014, pet. ref'd).    [ECF 19 at 147].    On March 18, 2015, the Texas Court of Criminal Appeals (TCCA) refused both of Benton's petitions.    *Benton v. State*, No. PD-0160-15, PD-0161-15 (Tex. Crim. App. 2015) (not designated for publication). [ECF 18 at 2; 17].    Benton did not seek certiorari review by filing petitions with the United States Supreme Court.

On May 13, 2015, Benton sought collateral review of his Collingsworth County convictions by filing state habeas corpus petitions.    Benton also filed motions to supplement his state habeas applications prior to final decision, and the trial court forwarded the application and motions to supplement to the TCCA.    On August 5, 2015, the TCCA denied Benton's state habeas applications on the merits without written order.    *In re Benton*, Nos. WR-54,453-04; WR-54,453-05. [ECF 19 at 126; 218].

On November 13, 2015, Benton purportedly placed the instant federal application for habeas corpus in the prison mailing system.    Benton's application was received, initially by the Eastern District of Texas, and file-stamped on November 17, 2015.    [ECF 1].    On March 31, 2016, respondent filed an answer to Benton's habeas application opposing relief.    [ECF 20].    On April 15, 2016, petitioner filed a reply ("traverse response') to respondent's answer.    [ECF 22].

II.
<u>FACTUAL HISTORY</u>

The state intermediate appellate court summarized the evidence in petitioner's case as follows:

The evidence at trial showed that, on April 14, 2012, the victim was eleven years old and had been sexually abused by her father since she was nine. Late that night, her father left his girlfriend's house and drove the victim to [Benton's] house. On the way, he displayed a television screen depicting a naked man and woman touching each other. After arriving at [Benton's] house, she played a card game with her father and [Benton], while watching television. In [Benton's] bedroom, a television depicted a naked man and woman touching each other. Later, the victim became tired and wanted to go to bed. Her father gave her some "Kool-Aid" to drink. She took a sip and poured the drink out because it tasted funny. She noticed the liquid came from a bottle labeled blueberry vodka.

She went into the bedroom with the television, turned it off and went to bed. Approximately, thirty minutes later, she awoke to the sound of the television. It had been turned back on and was showing naked male and female bodies touching each other. The victim's pants had been removed. Her father was in front of her touching his private parts while [Benton] touched her private parts with his mouth and used his tongue. She had baby oil on her back and bottom and [Benton] put baby oil on her legs. A black light in the bedroom was turned on. The victim got up, put her pants back on and went into the living room. [Benton] told her she looked more beautiful when she was not wearing her clothes. The victim subsequently reported these events to a school counselor.

Becky O'Neal, a Sexual Assault Nurse Examiner (SANE), testified the victim described [Benton] putting baby oil down her back and touching her genitalia with his mouth. She also testified that the mouth can be used, along with the tongue to penetrate the female sexual organ and that anything that passes the fat outer lips, the labia majora, touching the inner lips, the labia minora, however slight, is considered to be penetration. She noted in her exam that the victim's sexual organ did not show trauma but testified that such a finding was not inconsistent with the abuse described by the child.

The victim's counselor at her elementary school testified that the victim approached her and described the abuse her father had inflicted upon her. She also told the counselor that she and her father went to [Benton's] house, she was given blackberry vodka and was in a room with a black light when [Benton] rubbed lotion on her. She also said [Benton] had touched her with his hand. She was embarrassed, nervous and crying. The counselor called child protective services and the victim's mother.

Deputy Allen K. Riley served the arrest warrant on [Benton]. While searching [Benton's] house, he found playing cards similar to those described by the victim, a black light and a near empty bottle of baby oil. One wall in the house was covered with semi-nude photographs of females in various poses.

[ECF 18 at 20-22].

III.
BENTON'S ALLEGATIONS

Benton contends his convictions and confinement are in violation of the Constitution and laws of the United States on several grounds.    Specifically, Benton alleges:

1.    trial counsel was ineffective because of his failure to object to specific testimony at the pretrial outcry hearing, as well as testimony later introduced at trial;

2.    evidence presented at this trial was legally insufficient to prove Benton's guilt beyond a reasonable doubt because of inconsistent testimony of the victim and witnesses and insufficient testimony regarding penetration of the victim's genitalia; further, Benton argues in his reply/traverse response that he had always maintained his innocence;

3.    misconduct by the trial judge, the prosecutor, and the sheriff because Benton was initially denied access to his investigator for visits prior to and during preparation for trial;

4.    jurisdiction was lacking, as a valid indictment was required to issue in order to invoke the trial court's jurisdiction;

5.    the reporter's record failed to include the word-for-word transcription of the reading of the court's charges; and

6.    jury misconduct when trial counsel failed to bring to the attention of the court that a jury member told another that Benton was guilty before the trial started.

[ECF 1 at 6-7].

IV.
STANDARD OF REVIEW AND RULE 5 STATEMENT

Benton's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254.    Under 28 U.S.C. section 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings, unless he shows the prior adjudication:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).   A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).   A determination of a factual issue made by a state court shall be presumed to be correct.   28 U.S.C. § 2254(e)(1).   The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485.   When the Texas Court of Criminal Appeals denies relief on a state habeas corpus application without written order, such ruling is an adjudication on the merits that is entitled to this presumption.   *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

"When, as here, there is no reasoned state-court decision on the merits, the federal court 'must determine what arguments or theories ... *could* have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.'" *Sexton v. Beaudreaux*, --- U.S. ---, 138 S. Ct. 2555, 2558 (2018) (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (emphasis added)). If such disagreement among jurists is possible, then the petitioner's claim must

be denied. *Id*. In *Sexton*, the Supreme Court again emphasized its prior ruling that "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Sexton*, 138 S. Ct. at 2558 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Therefore, this Court must give a great degree of deference to the state court decision in denying Benton's habeas application. *Id.* at 2560. If any arguments or theories that are consistent with Supreme Court precedent could have supported the state's decision to deny habeas relief, this Court cannot override that decision. *Id*.

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Harrington*, 562 U.S. at 98.   Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no reasonable basis* for the state court to deny relief. *Id* (emphasis added).   This is so whether or not the state court decision reveals which of the elements, in a multi-part claim, it found insufficient. *Id*. Section 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Even where the state court does not cite applicable Supreme Court precedent or is unaware of the precedent, deference is required so long as neither the reasoning nor the result of the state-court decision contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id*. at 102-103.

Here, Benton filed state habeas applications challenging the constitutionality of aggravated sexual assault of a child (enhanced) and indecency with a child (enhanced) convictions and sentences, alleging the some of the same grounds alleged in the instant federal habeas petition. On August 5, 2015, the TCCA denied petitioner's state habeas applications without written order. *Ex parte Benton*, WR-54,453-04; WR-54,453-05. [ECF 19 at 126; 218].   The rulings of the TCCA constitute adjudications of Benton's claims on the merits.   *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).   Consequently, on all claims Benton submitted with his state habeas applications, this Court's review is limited to a determination of whether Benton has shown the state court's decisions that:

(1) Benton was not denied effective assistance of trial counsel;
(2) the evidence was legally sufficient to support convictions for aggravated sexual assault of a child (enhanced) and indecency with a child (enhanced);
(3) Benton received the assistance of his appointed investigator prior to trial;
(4) the indictment properly invoked the trial court's jurisdiction; and
(5) the trial court reporter's record was sufficient

were all based on an unreasonable determination of the facts in light of the evidence before the state court, or were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

Finally, this Court must consider whether Benton's claims regarding jury misconduct are procedurally defaulted. In order for Benton to merit the evidentiary hearing he requests, he must establish (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; *and* (2) by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found him guilty. *See* 28 U.S.C. § 2254(e)(2). Benton has never articulated a new law or fact he could not have presented to the state court upon due diligence; further, as discussed below, this Court finds Benton has failed

to show by clear and convincing evidence that no reasonable juror could have found him guilty absent constitutional error. Therefore, this Court finds an evidentiary hearing is not merited to determine relief in this case.

Rule 5 Statement

With the exception of Benton's claim of juror misconduct, which Respondent believes is procedurally defaulted and unexhausted, Respondent believes Benton has sufficiently exhausted his state-court remedies as to the other claims raised and that the petition is not time-barred or subject to the successive-petition bar. [ECF 20 at 6].

V.

MERITS

A. PROCEDURAL DEFAULT

In order to bring a federal court challenge to a state court judgment or conviction under 28 U.S.C. section 2254, a state court prisoner must exhaust all of his remedies in state court so that the state can have the initial opportunity to address the challenges made by the state prisoner and, if needed, correct any constitutional errors made. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To meet this exhaustion requirement, a state court prisoner must present all claims to the highest court of the state for review. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest court for purposes of exhaustion is the TCCA. *Richardson*, 762 F.2d at 431. In order for a specific claim to be exhausted, the state court system must have been presented with the same facts *and the same legal theory* upon which the petitioner bases his assertions. *Picard v. Conner*, 404 U.S. 270, 275-77 (1971). Additionally, any claims raised must be presented in the procedurally correct manner. *Castille*, 489 U.S. at 351. These claims may be presented to the highest court on direct appeal or in state post-conviction proceedings. *O'Sullivan*

*v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).

Respondent argues that Benton did not exhaust his sixth ground of jury misconduct before the state courts. [ECF 20 at 8]. Benton filed his state habeas application and later submitted motions to supplement that habeas application with the ground of juror misconduct outlined above. Benton did not include his supplement claim on the prescribed form and nothing indicates his amended ground was considered by the state courts. This Court agrees that Benton did not properly raise his juror misconduct claim before the state courts. *See Ex Parte Blacklock*, 191 S.W.3d 718, 719 (Tex. Crim. App. 2006) (citing Tex. R. App. P. 73.1(c) (rejecting grounds is a supplemental application that was not stated on the prescribed form); *see also Ex parte Walton*, 422 S.W.3d 720, 721 (Tex. Crim. App. 2014) ("[T]he Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form.") (emphasis in original).

Although "mixed" petitions that present claims that are both exhausted and unexhausted can be dismissed by federal courts in order to require petitioners to present only unexhausted claims and prevent piecemeal litigation, such is not necessary when the unexhausted claims are subject to the procedural-default doctrine. The procedural-default doctrine, also called the Texas abuse-of-the-writ doctrine, comes into play when a state court explicitly relies on a procedural bar, in which case the state prisoner must show cause for the default and must also show actual prejudice. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). Although recently the Supreme Court has allowed a new exception to this default by showing ineffective assistance of state habeas counsel or a lack of state habeas counsel resulted in the default, Benton has failed to raise this argument as grounds for the default. *See Martinez v. Ryan*, 566 U.S. 1 (2012); *see also Trevino v. Thaler*, 569 U.S. 413

(2013). Additionally, this exception applies only to claims of trial counsel's ineffectiveness that are "substantial" and "have merit." *Trevino*, 569 U.S. at 414.    Benton's procedurally defaulted claim relates only to trial counsel's performance in failing to object to juror misconduct. There is no indication from the evidence or arguments presented by Benton that trial counsel, Mr. Alvey, had any knowledge of juror misconduct prior to receiving the affidavit from Linda Neely, upon which counsel immediately moved for a new trial. Therefore, Benton has not linked to juror misconduct to trial counsel's alleged deficient performance such that this exception applies as a reason for his procedural default. Therefore, Benton had adequate opportunity to raise this claim in his initial state habeas application and has not presented good cause for his failure to do so.

Respondent also contends that Benton presented the affidavit supporting his juror misconduct claim in a motion for new trial *before* he initiated state habeas proceedings. [ECF 19-9 at 67]. Thus, this information was not new or undiscoverable evidence in his state habeas application. Further, "Texas law requires habeas petitioners to present all of their state habeas claims in their first petition." *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998). Benton responds to this in his reply/traverse response by arguing that he is factually innocent of the crime, and therefore allowing a procedural default of this claim would be a miscarriage of justice and would meet the above standards. However, Texas Code of Criminal Procedure 11.07 § 4(a) requires the state prisoner to show either that the information was previously unavailable (which it was not, as discussed above) or that no rational juror could have found the prisoner guilty beyond a reasonable doubt but for a violation of the constitution (as discussed below, this Court has agrees with the state court that sufficient evidence existed absent any constitutional violations that a reasonable juror could have found Benton guilty beyond a reasonable doubt).

For these reasons, this Court finds Benton's claim regarding juror misconduct has been

procedurally defaulted. It is not appropriate to dismiss Benton's instant habeas application to allow Benton to exhaust this claim of juror misconduct because Benton was aware of the facts and legal theories regarding this claim prior to filing his state habeas application. Additionally, as discussed in more detail below, Benton has not articulated he is factually innocent of the crimes resulting in his state convictions in question, nor does his claim regarding legal insufficiency of the evidence show that no reasonable juror could have found him guilty beyond a reasonable doubt without constitutional error. Consequently, Benton's ground related to juror misconduct should be denied.

B. EFFECTIVENESS OF COUNSEL

In the March 31, 2016 response to Benton's petition, Respondent thoroughly and accurately briefed statutory and case law regarding the applicable standards of review for claims of ineffective assistance of counsel.   [ECF 20 at 14-16].   The Court will not repeat Respondent's recitations regarding these well-accepted standards of review, except to again note an ineffective assistance of counsel claim requires petitioner show defense counsel's performance was both deficient *and* prejudicial under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 689 (1984).   If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then this Court need not consider the other prong.   *Id.* at 697.   Moreover, when a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and presumes defense counsel's performance fell within the bounds of reasonableness.   *Burt v. Titlow*, 571 U.S. 12, 15 (2013). To establish prejudice, Benton must show that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

As Benton's ineffective assistance of counsel claim was adjudicated on the merits in his state habeas proceeding, the denial of relief is considered to have been based on factual determinations.    Consequently, these state court adjudications will not be overturned unless they are objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).    A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance.    *Burt*, 134 S. Ct. at 15.    Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.    Benton has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014).    When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits and is entitled to this presumption.    *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

A federal court considers an ineffective assistance of counsel claim only under AEDPA's standard and should not perform a de novo *Strickland* analysis. As such,

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below the *Strickland* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Benton specifically complains of trial counsel's performance in failing to object to the absence of the

victim or her mother during the guidance counselor's testimony at the pretrial outcry hearing. [ECF 1 at 6]. Benton also alleges ineffective assistance of trial counsel by counsel's failure to object to relevance and bolstering of multiple witnesses and references made to the victim's father's actions. *Id*. at 6.

Benton's arguments regarding his ineffective assistance of counsel claim in trial counsel's failure to challenge the presence of the victim or her mother at the outcry hearing does not indicate the state court acted unreasonably in dismissing this claim. Only if the victim had been unable to testify at trial would the State have been prohibited from introducing the evidence elicited at the outcry hearing. *Sanchez v. State*, 354 S.W.3d 476, 488-89 (Tex. Crim. App. 2011). As acknowledged by Benton, the victim in this case did testify at his trial. Trial counsel cannot be found to have performed deficiently by failing to lodge an objection that is without legal merit. *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009).

Benton has failed to point to any evidence that trial counsel's failure to object to "bolstering" witnesses was not part of trial strategy, would have resulted in the suppression of the testimony of those witnesses, or would have led to a different trial outcome. Furthermore, trial counsel used the opportunity to cross-examine these witnesses and point out inconsistencies in the victim's story, which well could have been trial strategy in order to avoid the appearance of badgering the young victim witness and potentially angering the jury with such harsh questioning of a young witness.

Trial counsel did object to portions of the victim's outcry statement that contained inadmissible hearsay and ensured this portion of the statement was redacted. Benton's claims of ineffective assistance are largely conclusory and speculative with no legal or evidentiary basis, are contradicted by the record, and involve strategic and tactical decisions made by trial counsel.

Benton's claim of ineffective assistance of trial counsel in lodging the above objections to testimony are thus insufficient to raise a constitutional issue and are outside this Court's purview on federal habeas review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (providing trial counsel is not required to make frivolous objections). The Court's overall review of the record shows trial counsel devised a defense, made arguments, challenged evidence, made relevant objections during trial, cross-examined state witnesses, and gave closing argument on Benton's behalf. Benton is required to demonstrate that trial counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *See Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981). Benton has failed to accomplish this; thus, this ground is without merit and should be denied.

C. <u>SUFFICIENCY OF THE EVIDENCE</u>

Benton argues that the evidence was insufficient to establish that he "penetrated" the victim, as alleged in the indictment. Benton further argues that the complete lack of evidence on this issue and also the inconsistencies in the victim's statements regarding the drink she was provided, the game of cards played, her everyday living arrangements at the time, and the television show she watched the night in question raise additional sufficiency of the evidence concerns. Benton argues this challenge to the legal sufficiency of the evidence supports his claims of actual innocence and merits an evidentiary hearing on this issue. The Court disagrees with Benton's arguments.

A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence. *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the

Supreme Court held the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas-corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Id*. at 324 n.16; *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000).

Additionally, under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The question on federal habeas review is not whether the state courts complied with all "nuances" of state law or if the state courts failed to enforce a purely state rule; rather, the question is whether the evidence is constitutionally sufficient to support the conviction. *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991). Finally, where a state-appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993)

The state-appellate court did address Benton's claims regarding the sufficiency of the evidence. Further, that opinion was the "last reasoned opinion" to address the claims and should be reviewed to determine if denial of the claim was contrary or an unreasonable application of federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Applying the *Jackson* standard, and relevant state law, the state-appellate court addressed Benton's claim as follows:

Appellant contends the trial court erred by denying his motion for directed verdict on the issue of penetration. In that regard, we treat a point of error or issue complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

Appellant further contends the evidence is both legally and factually insufficient to support the conviction in each case. In that regard, we note the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Accordingly, [Benton's] issues essentially present a single issue, i.e., whether the evidence is sufficient to support the verdict in each case. *Id*. at 895.

[Benton] asserts there was insufficient evidence to establish that he penetrated the victim's female sex organ with his mouth or tongue or that he engaged in sexual contact by touching her genitals. Specifically, he contends the testimony of the victim was "so inconsistent and contradictory that they are unreliable to sustain the conviction of [Benton]." The State asserts there was sufficient evidence to create a jury issue on each question and this Court should defer to the jury's verdict. We agree with the State. *See Steadman v. State*, 280 S.W.3d 242, 243-45, 250 (Tex. Crim. App. 2009).

STANDARD OF REVIEW – SUFFICIENCY OF THE EVIDENCE

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all the evidence in a light most favorable to the verdict and determine, based on that evidence and the reasonable inference drawn therefrom, whether a fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011) (citing *Jackson*, 443 U.S. at 318-19 and *Brooks*, 323 S.W.3d at 895). In conducting our review, we do not sit as a thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

AGGRAVATED SEXUAL ASSAULT

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly, by any means, causes the penetration of the sexual organ of a child under seventeen years of age. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2014). The State may prove penetration by circumstantial evidence, and the victim need not specifically testify that there was penetration. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990). *See Murphy v. State*, 4 S.W.3d 926, 929 (Tex.App.—Waco 1999, pet. denied). Further, evidence of the slightest penetration is sufficient to uphold a conviction, so long as it is shown beyond a reasonable doubt. *Luna v. State*, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974).

INDECENCY WITH A CHILD

A person commits the offense of indecency with a child if, with a child younger than seventeen years of age he engages in sexual contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). For purposes of this section, "sexual contact" includes any touching of a child's genitalia with the intent to arouse or gratify the sexual desire of any person.

ANALYSIS

In *Vernon v. State*, the Court of Criminal Appeals explained that "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact" and amounts to "penetration" sufficient to sustain a conviction for aggravated sexual assault. *Vernon v. State*, 841 S.W.2d 407, 409-10 (Tex. Crim. App. 1992). The court held that the evidence of the defendant's "touching" of the complainant was sufficient to show "penetration" of the complainant's female sexual organ where evidence showed that the contact was "more intrusive than contact with her outer vaginal lips." *Id*. at 409-10 ("it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips").

Here, the victim testified she was undressed when [Benton] "touched" her genitalia with his mouth and used his tongue on her private parts. The SANE nurse examiner testified the mouth can be used along with the tongue to penetrate the female sex organ. She further testified that the absence of trauma to the victim's genitalia was not inconsistent with the abuse described by the child. In addition, the jury could circumstantially infer from [Benton's] use of pornography, vodka, a black light and baby oil that he intended to and did engage in more than simply touching the outside of her genitalia. Based upon this evidence, a reasonable juror could find that [Benton's] mouth contacted with the victim's labia minora and, per the definition in *Vernon*, was a "penetration" of her sexual organ, i.e., [Benton's] mouth and/or tongue reached beyond the outer layer of skin comprising the external genitalia or labia majora. *See Villa v. State*, 417 S.W.3d 455, 462 (Tex. Crim. App. 2013) (a reasonable juror could find appellant's testimony that he put cream on the red area outside the child's vagina and/or touched the genitals of the child as an admission of penetration).

In light of this testimony and evidence, we find a reasonable fact finder could have concluded that [Benton's] mouth and/or tongue penetrated the victim's sexual organ and that such touching was done with the intent to arouse or gratify his sexual desires. Accordingly, we find the evidence sufficient to support the jury's verdict in each case and overrule [Benton's] respective issues. *See Villa*, 417 S.W.3d at 462; *Steadman*, 280 S.W.3d at 243-45, 250.

This Court must give deference to the state-appellate court's analysis under

*Jackson*. First, the Court notes that Benton has not identified any errors in the application

of law used by the state-appellate court. Second, the state-appellate court properly

considered the elements of each offense of Benton's conviction and applied the appropriate standards to each conviction. Third, the state-appellate court considered the evidence, as required, in the light most favorable to the guilty verdict. This Court notes that Benton has attached the trial testimony of the victim from both his trial and the trial of the victim's father. Benton has highlighted every inconsistency in the victim's testimony. However, this Court is not in the position to judge the credibility of the witnesses or evidence presented in Benton's trial. Instead, this Court, like the state-appellate court, must give deference to the fact finders in making these determinations. Thus, this Court agrees with the state-appellate court that a reasonable juror could find Benton guilty of both aggravated sexual assault and indecency with a child based on the evidence reviewed by the state-appellate court. Any contradictory evidence could have been rejected by the triers of fact as not credible or not inconsistent.

Benton appears to argue by his reply/traverse response that he is actually innocent of the crime alleged. The only claim he has properly raised by his petition and state habeas applications is legal sufficiency of the evidence. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). This extremely narrow test is satisfied only if Benton can demonstrate that his acts "have been ruled not to constitute criminal conduct." *Underwood v. United States*, 166 F.3d 84, 88 (2d Cir. 1999); *see also Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (petitioner must establish that he or she "may have been convicted of a nonexistent offense"). To meet this test, the "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).

Benton's claims of factual innocence are meritless, especially in light of the analysis of the state-appellate court regarding legal sufficiency of the evidence. Furthermore, Benton has not challenged the elements of the offenses of his convictions to establish that his actions could not constitute a violation of the law. Accordingly, this ground should be denied.

D. MISCONDUCT BY JUDGE, PROSECUTOR OR SHERIFF

Benton argues that he was denied access to the investigator assigned to assist with his defense prior to and during preparation for trial. Benton also argues and presents the Court with evidence that he urged his trial counsel to file a motion to disqualify the prosecutor due to a past conflict, but his trial counsel only prepared, and did not file, the motion.

Benton has not articulated how any denial of access to his investigator led to a failed investigation into an element of the crimes of his convictions or into significant punishment evidence, nor does Benton articulate what additional meetings between himself and his investigator would have accomplished.   A federal court can only remedy constitutional or statutory errors in the proceedings. *Estelle v. McGuire*, 502 U.S. 62, 98 (1991). Additionally, the federal harmless error standard applies, requiring that the trial court error had substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Fry v. Pliler*, 551 U.S. 112 (207) (holding that the *Brecht* standard applies in all section 2254 proceedings).

In fact, the trial court addressed Benton's concerns that he was being denied access to his investigator in a pretrial hearing. Trial counsel announced that his readiness for trial was dependent upon access between Benton and the assigned investigator. The Collingsworth County Sheriff was present in the courtroom during the pretrial hearing

and arrangements to provide sufficient notice of investigator visitations were made at that time. It appears from the record that the pretrial hearing addressed any misconduct by the Sheriff in denying access to the investigator (no involvement in the denial by the prosecutor or judge was ever shown). Benton has failed to show a substantial harm that arose from the failure to meet with his investigator earlier.

A defendant who alleges counsel was deficient for failing to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Although Benton places the blame on the prosecutor, judge and sheriff for failing to allow his investigator to investigate, he must still show what the investigation would have revealed and how it would have altered the outcome of the trial in order for this Court to understand the "substantial and injurious" effect such a deprivation (if it occurred) would have had on the outcome of this case. Benton has failed to meet his burden to show error in this claim.

Benton's claim that the prosecutor, Luke Inman, had a "conflict of interest" in proceeding as the prosecutor in this case appears to relate to a prior instance where Inman had possibly been involved in a probate issue involving Benton in the past. Benton fails to articulate how this past interaction created a conflict that affected his trial or sentencing in this case. Benton has failed to establish any actual conflict of interest and has failed to articulate or establish the prejudice involved in Inman's prosecution of this case by articulating how another prosecutor would have handled the case differently. Thus, Benton has failed to show any error on this ground.

E.  INSUFFICIENT INDICTMENT

Benton argues that the indictments failed to attach jurisdiction to the trial court

because they failed to identify the location (county) where the offenses occurred. However, Benton is factually incorrect in this argument. The Indictments, quoted above, identified the county as in "said county and state." In the paragraphs directly preceding the elements of the crime, the Grand Jury is identified as sitting in Collingsworth County in Texas. Thus, the Indictments did identify the proper county. On federal review, a district court is "required to accord due deference to the state court's interpretations of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). In fact, "where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Id*.

By denying relief, the TCCA necessarily found that the indictment in this case conferred jurisdiction. *McKay*, 12 F.3d at 70 (citing *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985) (noting that when the TCCA denies a state writ without written order that included a challenge to the sufficiency of the indictment, it implicitly determined that the indictment conferred jurisdiction on the trial court and is sufficient under state law.) Further, Benton has not raised the issue that his residence (where the crime occurred) is, in fact, outside the jurisdiction of Collingsworth County, Texas, or that the Indictments were otherwise defective, rendering jurisdiction inappropriate. Thus, the Court finds Benton has failed to meet his burden to show a constitutional defect on this claim.

F.  DEFICIENT REPORTER'S RECORD

Benton argues that the court reporter for the trial failed to record the trial court's reading of the charges to the jury. In this case, the trial court read written charges aloud to the jury and only the written charges were admitted into the record. However, Benton has

failed to obtain any evidence to contradict the reading of the written charges as admitted into the record. Furthermore, Benton has not established error.

A failure by a court reporter to record unspecified errors for review does not create a constitutional issue subject to federal review. *Higginbotham v. Louisiana*, 14-30753, 2016 WL 1085737, at *2-3 (5th Cir. Mar. 18, 2016) (citing *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980) (holding that "a complete verbatim transcript" is not always required to ensure that a defendant's right to meaningful appellate review is satisfied.) State law requires that a trial judge "shall read his charge to the jury as finally written, together with any special charges given." Tex. Code. Crim. Proc. Art. 36.16. If a trial judge fails to do so, "whenever it appears by the record in any criminal action upon appeal that any requirement of Article 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Art 36.19. Although the reporter's failure to transcribe the reading of the charge is possible error, the error is not a constitutional violation subject to remedy by this Court. *Brossette v. State*, 99 S.W.3d 277, 285-86 (Tex. App.—Texarkana 2003, pet. ref'd, untimely filed).

Furthermore, Benton waived this error by failing to object at the time of trial. *Id.* After the trial judge in Benton's case ordered a directed verdict as to two counts of indecency with a child, the court took a recess to edit to jury charge. Neither party objected to the final version of the charge or the reading of the charges prior to deliberation. There was never an objection lodged about the reporter's failure to record the reading of the charge during the trial or after.

Benton argues that the guilt/innocence charge was not accurately reflected after the removal of the two counts; however, based on the written instructions, this belief appears to be based solely on Benton's speculations, which is insufficient to state a claim for constitutional error. *See Ross v. Estelle*, 694 F.2d 1008. 1011-12 (5th Cir. 1983). Thus, this Court concludes that Benton has failed to raise a constitutional issue as to this ground and it should be denied.

VI.
RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner ERNEST BENTON be DENIED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusion and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 11, 2018.


LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.    In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.    Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).    **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."   Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.   A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB54:FCR:BENTON-DENY-SIX.GROUNDS: 3